# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAGUIB MUHAMMAD, | : |
| *Plaintiff*, | : |
| | : |
| v. | : CIVIL ACTION NO. 25-CV-5971 |
| | : |
| SERGEANT PISTON, *et al.* | : |
| *Defendants*. | : |

## MEMORANDUM

**Pappert, J.**                                                                                                 **January 15, 2026**

*Pro se* Plaintiff Naguib Muhammad, an incarcerated individual housed at SCI Houtzdale, asserts constitutional claims pursuant to 42 U.S.C. § 1983 in connection with an alleged assault by corrections officers while housed at SCI Phoenix. He names ten SCI Phoenix prison officials as defendants. For the following reasons, the Court will grant Muhammad leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Muhammad may file an amended complaint or proceed on the claims that pass statutory screening.

I[1]

On July 28, 2025, when Muhammad's arms were restrained in handcuffs behind his back, Sergeant Piston struck him "with a closed fist" and gouged his eyes with his fingers. (Compl. at 8.) During this time, Officer Harris "put" his elbow in Muhammad's face and neck and Lieutenant Patterson "emptied a full can of pepper spray" on him.

---

[1] The factual allegations set forth in this Memorandum are taken from Muhammad's Complaint. (*See* Dkt. No. 2.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

(*Id.*)  Unit Manager Grinivich, who supervises both Piston and Harris, "witnessed" the alleged "assault" but did not intervene to stop it.  (*Id.*)  As a result of Defendants' conduct, Muhammad suffered injuries to his shoulder, back, and neck.[2]  (*Id*. at 7.)

Muhammad claims that prison officials refused to investigate the July 28th assault.  He asked Internal Security Lieutenant C. Hartless to contact SCI Phoenix's "Intelligence Gathering Lieutenant" to report the assault, but Hartless refused to and "refused to take any investigative action."  (*Id*. at 9.)  Special Agent Shanice Rapp, who is "assigned to investigate and address all incidents involving excessive force," also "refused to take action" after Muhammad notified her about the assault.  (*Id*.)  Muhammad also reported the assault to Superintendent Terra, Deputy Superintendent H. Kertes, and Internal Security Captain Dusel, but these Defendants "fail[ed] to supervise" and directed Grievance Coordinator Orlando to "destroy" his grievance paperwork.  (*Id*. at 9-11.)  Terra, Kertes, and Dusel also allegedly placed Muhammad in a "POC unit" where he was held naked for six days without clothing, blankets, or a mattress "as a retaliation tactic" because he filed a grievance about the assault.  (*Id*. at 10.)  Based on these allegations, Muhammad asserts constitutional claims and seeks money damages.  (*Id*. at 5, 7.)

---

[2] Muhammad alleges that Piston also "assaulted" him on July 26, 2025, when, prior to searching his cell, Piston "shoved" Muhammad outside of his cell. (Compl. at 8.)  It is not clear from the Complaint whether Muhammad also asserts an excessive force claim against Piston based on this incident.  If he does, the claim must be dismissed, as set forth more fully below.  Further, there is no basis for a claim based on Piston's allegedly "illegal search" (Compl. at 8) of Muhammad's cell.  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells"); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.").

2

II

The Court will grant Muhammad leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 678 (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Muhammad is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

---

[3] Because Muhammad is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

Muhammad asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[4] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

A

Muhammad asserts excessive force claims against Piston, Harris, and Patterson and a failure to intervene claim against Grinivich. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8

---

[4] Muhammad appears to have sued at least some Defendants in their individual and official capacities. (Compl. at 3.) Official capacity claims against a defendant are indistinguishable from claims against the entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, Muhammad's § 1983 "official capacity" claims for damages against the Defendants—all of whom are employed by the Pennsylvania Department of Corrections—are really claims against the Commonwealth, which is shielded from such claims by Eleventh Amendment immunity and, in any event, is not considered a "person" subject to liability under § 1983. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). The rest of the Court's analysis will focus on the damages claims against the Defendants in their individual capacities.

4

(1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, "[t]he use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a per se constitutional violation). A prison officer's failure to intervene may also serve as a basis for liability under § 1983 if the officer "had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id*. at 651.

Muhammad asserts that on July 28, 2025, while he was handcuffed, Piston struck him with an open fist and gouged his eyes, while Harris used his elbows to restrain his neck and face, and Patterson emptied a bottle of pepper spray on him. Grinivich was present and witnessed the incident but did nothing to stop the officers. Accepting all of Muhammad's allegations as true and resolving all reasonable inferences in his favor, Muhammad has stated plausible excessive force claims against Piston, Harris, Patterson, and Grinivich, based on the July 28, 2025 incident and may proceed on those claims.

To the extent Muhammad asserts a claim based on his "assault" by Piston on July 26, 2025, where Piston "shoved" Muhammad outside of his cell to conduct a cell search, the claim is undeveloped and cannot proceed as pled. Muhammad fails to allege any details about the circumstances surrounding the alleged need for force, such as the reasons why he shoved, whether he suffered any injuries, and whether or not there was any immediate threat to the safety of others. Absent any factual allegations suggesting that the use of force was maliciously and sadistically applied for the very purpose of causing harm, his claim against Piston based on the July 24 incident cannot support a plausible Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678; *Maldonado v. Rankin*, No. 23-3942, 2023 WL 7386674, at *2 (E.D. Pa. Nov. 8, 2023) (dismissing excessive force claim as undeveloped where the plaintiff alleged that officer escorted him "very aggressively" and "slammed" him into the side of a van, because the plaintiff failed to allege sufficient facts describing the force used and the circumstances under which it was used).

B

Muhammad claims that Superintendent Terra, Deputy Superintendent H. Kertes, and Internal Security Captain Dusel failed to supervise the corrections officers after being notified about the assault. Supervisors like Terra, Kertes, and Dusel can only be found liable for the unconstitutional acts undertaken by their subordinates in two scenarios. First, a supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom, which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Failure to" claims, such as a failure to train, failure to discipline, or failure to supervise, are generally considered a subcategory of policy or practice liability. *Id.* at 316-17.

Muhammad's sole conclusory assertion that Terra, Kertes, and Dusel are liable due to their "failure to supervise" corrections officers is not sufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678; *see also Benton v. Murtha*, No. 3:21-1136, 2022 WL 1570476, at *3 (M.D. Pa. May 18, 2022) (dismissing claims against prison supervisors based on conclusory allegation that they failed to supervise the alleged violation of the plaintiff's constitutional rights). Moreover, to the extent that Muhammad named Terra, Kertes, and Dusel due to their high-ranking positions at SCI Phoenix, this is also not sufficient to state a plausible claim. Generalized allegations

that a supervisory defendant is "in charge of" or "responsible for" a facility or their subordinates are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Accordingly, the Court will dismiss Muhammad's supervisory liability claims against Terra, Kertes, and Dusel without prejudice and permit him to amend these claims.

C

Muhammad alleges that Hartless and Rapp failed to report or investigate the alleged "assault" by Piston and Harris after Muhammad informed them about it. These claims must be dismissed with prejudice because there is no constitutional right to an investigation. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)). In addition, simply being notified about an alleged constitutional violation after it happened is not sufficient to establish a causal link between the constitutional harm and the Defendants' actions to establish personal involvement. *See Ricker v. Weston*, 27 F. App'x 113, 119-20 (3d Cir. 2002) (concluding that a decision not to discipline does not establish personal involvement "given that all of the injuries occurred before the decision" and "[t]here is simply no causal link between those injuries and what [the defendants] did or did not do");

*Williams v. Wetzel*, No. 23-1235, 2025 WL 908406, at *2 (W.D. Pa. Mar. 26, 2025) ("[A]fter-the-fact notice is not sufficient to establish personal involvement."). Accordingly, the claims asserted against Hartless and Rapp are not viable and must be dismissed with prejudice.

D

Muhammad alleges that Terra, Kertes, and Dusel directed the Grievance Coordinator, Gina Orlando, to "destroy grievance documentation" to "prevent" him from administratively exhausting his claims through the prison grievance process. (Compl. at 11.) Muhammad also asserts a claim against Orlando for destroying his grievance paperwork. Muhammad's claims must be dismissed as not plausible because a prisoner has no constitutional right to a grievance process. *See Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). Thus, Muhammad's claims against Terra, Kertes, Dusel, and Orlando that are based on the alleged destruction of his grievance paperwork are not plausible. *See Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (stating that the "alleged obstruction of prison grievance procedures does not give rise to an independent claim" because "[p]risoners do not have a constitutional right to prison grievance procedures." (*citing Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)); *Davis v. Eberling*, 742 F. App'x 592, 595 (3d Cir. 2018) (*per curiam*) ("[A]ccess to prison grievance procedures is not constitutionally required")); *Zehring v. Sorber*, No. 20-3195,

9

2020 WL 4059950, at *3, *5 (E.D. Pa. July 18, 2020) (dismissing conspiracy claim to "obstruct justice in the grievance process" because prisoners have no constitutional right to a grievance process). Accordingly, the Court will dismiss these claims with prejudice.[5]

E

Muhammad also appears to assert First Amendment retaliation claims against Terra, Kertes, and Dusel, based on allegations that these Defendants placed him in a POC unit where he was held naked for six days without clothing, blankets, or a mattress. According to Muhammad, he was put in the POC unit as retaliation for filing a grievance about the July 28th assault. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing

---

[5] Although the Court will dismiss any substantive claims based on the alleged interference with Muhammad's grievance process, these allegations may be relevant to show administrative exhaustion in the event Muhammad's claims pass statutory screening.

10

to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Muhammad's retaliation claims are undeveloped as pled. First, he alleges that all three supervisory defendants placed him in the POC unit as retaliation without specifically stating how each defendant was involved or clarifying the specific basis for each Defendant's liability, which is not sufficient to state a claim. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff). Additionally, Muhammad does not plausibly allege the requisite causal connection between a protected activity and any alleged retaliatory conduct by a Defendant. He does not state in his Complaint when he filed the grievance or otherwise notified Terra, Kertes, or Dusel about the assault or when he was placed in the POC unit. Without additional information, the Court cannot "draw the reasonable inference that [any named] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see Watson*, 834 F.3d at 422; *see also Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, [] conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."); *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim.").

Accordingly, the Court will also dismiss Muhammad's First Amendment retaliation claims without prejudice and permit him to amend these claims.

## IV

For the foregoing reasons, the Court will grant Muhammad leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice. The following claims will be dismissed with prejudice: the official capacity claims, any claims based on Defendants' failure to investigate, and any claims based on Defendants' interference with the grievance process. Muhammad's excessive force claims asserted against Piston, Harris, Patterson, and Grinivich, based on the July 28, 2025 incident, pass statutory screening and may proceed to service. The balance of the Complaint will be dismissed without prejudice. The Court will permit Muhammad to file an amended complaint if he can cure the defects the Court has noted as to his claims. In the alternative, Muhammad may proceed with the claims that pass statutory screening. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**